IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2019

## STATE OF TENNESSEE v. CHRISTIAN BLACKWELL

**Appeal from the Criminal Court for Shelby County**
No. 13-06191    W. Mark Ward, Judge

_____

### No. W2018-01233-CCA-R3-CD

_____

The Defendant, Christian Blackwell, was convicted by a Shelby County Criminal Court jury of rape of a child, a Class A felony, and sentenced to twenty-five years in the Tennessee Department of Correction. On appeal, he argues the trial court erred in excluding unrelated allegations of sexual abuse made by the victim's sister, in admitting the victim's forensic interview into evidence, and that the evidence is insufficient to support his conviction. After review, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Jessica L. Gillentine, Bartlett, Tennessee, and Benjamin Israel, Memphis, Tennessee (on appeal), and Thomas E. Hansom, Memphis, Tennessee, (at trial), for the appellant, Christian Blackwell.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Defendant was indicted for rape of a child based on allegations that he put his penis in the victim, his sister's, mouth after blindfolding her.

**Hearing on Motion to Admit Forensic Interview**

Carla Coleman, an investigator with the Department of Children's Services ("DCS"), testified that she received a referral in January 2013 regarding allegations of sexual abuse of the victim by the Defendant and psychological harm to the victim by her grandmother. DCS later determined that the allegations of psychological harm to the victim by her grandmother were unsubstantiated.

Ms. Coleman testified that she visited the victim's home and interviewed her. The victim's mother, the victim's mother's boyfriend, and three of the victim's siblings were present in the house that day. She spoke with the victim in private and asked her whether anyone had ever "done anything" to her. The victim disclosed that the Defendant, her brother, had sexually abused her. The victim provided Ms. Coleman with information that was consistent with the initial report of abuse. The interview lasted approximately ten minutes and was not recorded. After speaking with the victim, Ms. Coleman spoke with the victim's siblings, individually, as well as the victim's mother. She then scheduled a forensic interview for approximately two weeks later. Ms. Coleman conducted background checks on the victim's mother, grandmother and the Defendant, but not on the victim's mother's boyfriend.

Ms. Coleman testified that the victim's mother brought the victim to the forensic interview, and the victim's mother's boyfriend and a sibling were present as well. Ms. Coleman explained the process to the victim and her family, but she did not ask the victim any questions about the abuse because she did not want her to reach the point of being unwilling to talk during the forensic interview. Ms. Coleman observed the interview, and the victim's account was consistent with what she had previously disclosed to Ms. Coleman. Ms. Coleman acknowledged that the victim's family had previous interactions with DCS, but she could not recall the details of those allegations.

Letitia Cole, a forensic interviewer with the Memphis Child Advocacy Center, conducted the forensic interview of the victim, who was seven years old at the time. No one else was present during the interview, and it was recorded. She asked open-ended questions to avoid leading the victim, and the victim gave age-appropriate responses.

Ms. Cole recalled that the victim told her that "her brother made her put her mouth on his penis." Before making this disclosure, Ms. Cole showed the victim anatomical diagrams of the human body, and at first the victim said that "no one ever touched her anywhere on her body." They discussed the male anatomical diagram, and the victim said that she had not "seen the penis or the behind[.]" Ms. Cole asked the victim who she could tell if someone did something to her that was not okay, and the victim answered that she could tell her mother and grandmother. Ms. Cole then asked the victim if she

had ever told her mother and grandmother that someone had done something to her and that was when the victim disclosed what had happened with the Defendant.

Ms. Cole testified that during the interview, the victim seemed well-oriented to time and place, although she was confused as to the year, thinking it was 2012 when it was 2013. The victim recalled that the incident happened when the Defendant was home visiting from college, but she did not know the name of the school he attended. The victim said, "He's not really 18. He's like an eight and a zero." Ms. Cole asked the victim how she knew that the Defendant had put his penis into her mouth if she was blindfolded. The victim responded that God had told her but also that she had looked down from under the tie and could see. Ms. Cole stated that she asked follow up questions to clarify some of the victim's responses.

The victim was nine years old at the time of the hearing. She confirmed that she understood the difference between the truth and a lie. The victim recalled watching part of the video of the forensic interview at the prosecutor's office. She remembered that a woman named Lois was present while she watched the video, and a man was there for a portion of the video as well. She said that she was "[s]ort of" scared when she watched the video, and that one of the prosecutors got upset with her when she did not remember things and told her "[y]ou have got to remember that." She testified that she was telling the truth when she answered the questions in the video.

The victim recalled watching part of the video again in defense counsel's office; it was muted so she could not hear the sound. The victim recognized herself in the video, but she did not recognize the interviewer or remember being with the interviewer. The victim said that she did not remember any questions that the interviewer asked or any of her answers. The victim confirmed that the interview took place two years prior, when she was seven years old. The victim remembered talking to defense counsel about her saying in the video that the Defendant would lock the bathroom door but that the door, in fact, will not lock. She said that she did not remember talking about the Defendant locking the bathroom door during the interview but that she did not try to lie about anything. The victim confirmed that it was her in the video and that she was telling the truth when she answered the questions in the video, although she could not remember the questions and answers at this point in time.

**Trial**

Sergeant Katie McKinnie with the Shelby County Sheriff's Office Sex Crimes Division investigated the allegations of abuse of the victim in February 2013. The complaint came as a referral from DCS. The victim's mother was the one who made the original complaint, and it involved two of her children – the seven-year-old victim and

eighteen-year-old Defendant. The victim's mother reported that the rape had occurred on January 9, 2013. The complaint was made outside of the 72-hour window to obtain a sexual assault examination. Sergeant McKinnie reached out to the victim's mother about scheduling a forensic interview with the victim, and she was "[v]ery cooperative." She attempted to speak with the Defendant but was unable to reach him. Sergeant McKinnie did not ask the victim's mother about her relationship with the Defendant, but she observed that the victim's mother spoke of the Defendant like "a concerned mom."

The victim's mother testified that she had six children, who were between the ages of 12 and 24 at the time of trial. During the time period from December 2012 to January 2013, the victim's mother and her children lived with her mother and step-father and then moved to another residence with her boyfriend. The Defendant did not live with them because he was attending college in Chattanooga, but the victim's mother believed that the Defendant had come home for Christmas break.

The victim's mother testified that the victim disclosed the allegations to her at some point between December 2012 and January 2013. The victim's mother called a child abuse hotline about "[o]ne to two months" later and thereafter reported the abuse to DCS. She remembered that someone came to her house to talk to them and that she took the victim to the Child Advocacy Center for counseling on a weekly basis for a time.

The victim's mother testified that when she was living with her mother and step-father, she had a bedroom of her own, but the room did not have a door, and her boyfriend would frequently spend the night. The victim's mother acknowledged that she originally told DCS that the victim had not seen pornography, but when she learned that the victim had, she advised the Child Advocacy Center of such. The victim's mother learned this information because the victim admitted to her that she had watched pornography, and the victim's mother checked the search history on the computer.

The victim's mother admitted that prior to making the report against the Defendant, she was concerned that someone might be molesting the victim and would not permit her to spend the night with friends due to suspicions of the victim's friends' fathers or grandfathers. She also suspected that her own boyfriend was molesting the victim. The victim's mother did not report any of these concerns. She acknowledged that she had suspected that two or three people had molested the victim before she reported the allegations against the Defendant.

The victim testified that she was twelve years old at the time of trial. She did not recall where she was living during the time in question. She remembered getting along with the Defendant when they lived together and did not remember anything bad happening with him. The victim remembered watching the video of her forensic

- 4 -

interview with the prosecutor a couple of days earlier and recognized herself in the video. However, she did not remember having the conversation that occurred on the video or of the events discussed during the interview happening. She did not remember going to the Child Advocacy Center. On cross-examination, the victim said that in preparing her for trial, the prosecutor told her that she needed to remember the things on the video and that she needed to tell the truth. The victim acknowledged that she had watched pornography when one of her brothers was watching it.

Letitia Cole, a forensic interviewer with the Child Advocacy Center, interviewed the victim. Ms. Cole said that the only information she had prior to the interview was the allegation and alleged suspect. Ms. Cole authenticated the video of the interview, and it was played for the jury. Ms. Cole acknowledged that in the video, the victim stated that she had never been touched on her mouth, breasts, vagina or buttocks, and that she had never seen a penis. Ms. Cole agreed that the victim was contradictory or confused in some parts of the interview. Ms. Cole recalled that when asked how she knew the Defendant put his penis in her mouth, the victim said "because God told her and she looked down and saw it." Ms. Cole stated that the victim told her that what took place between her and the Defendant was a "game" and that after they finished the "game," she went and played with her parakeet.

In the video of the forensic interview that was entered into evidence, the victim said that the areas of her body that other people were not allowed to touch were her buttocks, vagina, mouth and "noobs," which she identified as her breasts. The victim pointed out on the male body that the penis, "noobs," and ears (because they are dirty) should not be touched. She said that she had not seen a boy's penis, buttocks, or "noobs."

The victim initially said that no one had touched her on the body parts that she had listed as being areas that should not be touched. When asked who she could tell if someone did touch her mouth, "noobs," vagina, or buttocks, she responded that she could tell her mother or grandmother. She said that she told her mother and grandmother that the Defendant put his "wiener" in her mouth and that she vomited on it. She identified the "wiener" as the penis on the diagram of a male body. She said that the Defendant told her to come into the bathroom, and he tied something around her eyes. She thought the Defendant locked the door. She explained that she looked down from under the bottom gap of the blindfold and saw "a fluffy ball," which she clarified was the Defendant's "wiener."

The victim recalled that the Defendant made her kneel and put her hands behind her back. She said that he put his finger in her mouth as well as his "wiener." She knew that he put his penis into her mouth because "God told her," although she clarified that

she was also able to see by looking down. He told her to suck on his penis as hard as she could. She threw up on his penis because it hurt her throat, and the "game was over." The Defendant did not tell her what the game was called. The victim recalled that it felt "really, really, really bad." The victim said that the Defendant always gave her a piece of gum when they were finished. She didn't remember how many times it had occurred but thought it happened five times. She said that she told her grandmother about what had happened and that she could tell the Defendant not to do it again.

The victim recalled that the Defendant attended college. She said that he was not eighteen; he was an "eight and a zero." She began to count from eighteen as though she was unsure of the number. She remembered that her grandmother, mother, brothers, and sister were home during the rape. When asked what she was doing in the Defendant's room before he took her into the bathroom, she responded that she was playing with the bird. She thought that the last time that the Defendant raped her was "this January." She thought that the current year was 2012. She confirmed that no one else had ever put their penis into her mouth and that the Defendant had not put his penis or finger anywhere else on her body.

The victim and Defendant's grandmother testified that prior to the Defendant's arrest, the victim had never mentioned anything to her about sexual misconduct by the Defendant. She recalled that when the victim's mother and her children lived in her home, the bathroom door near the Defendant's bedroom did not shut or lock due to a structural issue. There were five bathrooms in the house, and the other bathrooms had doors that locked. She recalled that the family owned a parakeet from February to August 2010, but did not have a parakeet in 2012 or 2013.

The victim and Defendant's grandmother recalled that the Defendant came home for Christmas break in December 2012, but he did not stay in the house because they got into a fight when he announced that he had dropped out of college. However, "[h]e came back for Christmas" for "about four days[.]" The Defendant also lived with her for "a couple weeks" at the end of January and early February until he moved to Montana that February. He moved back to Memphis the following December.

The Defendant testified that he did not sexually penetrate the victim. He recalled that he was enrolled in college in Chattanooga until December 2012, and he returned to Memphis in the middle of the month after he dropped out. He went to his grandmother's house where his mother and siblings were living, but he did not stay there long because he and his grandmother got into a fight about his dropping out of college. He then went to his great-grandmother's house, although he returned to his grandmother's house for a few days at Christmas. He slept in a bedroom downstairs, and his younger siblings slept upstairs. He was aware that his mother and siblings moved in January, but he did not

know the reason why as he was not in the house at the time. The Defendant said that he and the victim were as close as siblings normally are prior to the allegations coming out against him.

Following the conclusion of the proof, the jury convicted the Defendant as charged of rape of a child.

## ANALYSIS

### I.  Other Allegations of Sexual Abuse

The Defendant argues that the trial court erred in excluding evidence that the victim's sister had made unrelated accusations of sexual abuse by other individuals that DCS did not substantiate to "exemplify and underline the atmosphere of the home the victim was raised in." He asserts that the evidence is relevant to offer an explanation as to why the victim would know about sexual things and provide an alternative theory as to "why a young child would have enough knowledge to fabricate such a story."

During trial, the State requested that the trial court exclude any proof of allegations of sexual misconduct made by other family members of the victim as being irrelevant. Specifically, the victim's older sister had made allegations of sexual abuse, by someone other than the Defendant, and the victim's mother had previously reported inappropriate conduct by people other than the Defendant. The State did not intend to call the victim's sister as a witness at trial, but it intended to call the victim's mother.

The defense responded that it wanted to provide an alternate explanation for "where did [the things the victim said in the forensic interview] come from if it did not in fact occur, where did the seven year old contrive or have this information, these facts." The defense said that it wanted to establish that the victim's mother ran away from home at the age of fifteen, became pregnant, and was subsequently placed in Lakeside hospital where she accused a doctor of fondling her. The defense also wanted to show that the mother had referred another of her sons for sexual counseling, and that another daughter had made three accusations of sexual misconduct by other individuals. The defense wanted to argue that the victim's mother was fixated on sex as it related to her children.

The victim's mother testified that she reported the allegations of sexual abuse of the victim by the Defendant to DCS. She acknowledged that she had previously referred another son for counseling for sexual misconduct when he was around twelve years old, shortly after she made the complaint to DCS regarding the Defendant. She said that she referred that son to counseling because he was watching pornography. The victim's

mother stated that in 2015 or 2016, her other daughter, not the victim, accused four people of sexual abuse.

The victim's mother admitted that, twenty five years ago, around the age of eighteen, she ran away from home and became pregnant with the Defendant. She was admitted to Lakeside hospital for treatment and, while there, reported that a doctor fondled her. The victim's mother acknowledged that she did not allow her daughter to spend the night in the homes of friends out of fear that the fathers and grandfathers were sexually abusing her. She also did not allow other people, including friends of her children, to spend the night in her home for fear that they would sexually abuse her children.

The trial court first looked at the issue under Tennessee Rule of Evidence 608 and determined that the victim's sister's credibility could be attacked, if she were to testify, with questions about the prior allegations as specific instances of bad conduct, but that the Defendant would be bound by her answer. The trial court also concluded that the Defendant would not be entitled to use extrinsic evidence to prove that the allegations were false if the victim's sister denied that they were false. Tenn. R. Evid. 608(b). The trial court also looked at the issue under Tennessee Rule Evidence 404(b) and determined that the defense could introduce the evidence if it could prove that the allegations were in fact false and that the probative value outweighed the prejudicial effect. The court summarized that under both rules, the prior allegations of sexual misconduct were irrelevant unless they were false. The court concluded that it did not "have under 608 the reasonable factual basis to find that they're false . . . [or] have under 404 clear and convincing evidence that they're false." Accordingly, the trial court excluded evidence of the victim's sister's unrelated complaints of sexual abuse that occurred after the victim's rape.

The Defendant argues that the trial court should not have applied either of the aforementioned rules in reaching a decision. He asserts that "Rule 608 should not have been applied in the court's ruling . . . [because] [c]ounsel was not requesting to have said evidence entered to impeach the mother[.]" The Defendant is correct that Rule 608 would not apply to the victim's mother because allegations of misconduct raised by the victim's sister against other people could not be used to impeach the victim's mother. However, we discern no error in the trial court's preemptive ruling under Rule 608 addressing the situation if the victim's sister was to testify.

The Defendant also asserts that the court should not have applied Rule 404(b) because the acts at issue were not committed by the Defendant and "Rule 404(b) is limited to such evidence relative to the other crimes or acts of the [D]efendant." The Defendant argues that, instead, the trial court should have only reviewed the issue under

Tennessee Rules of Evidence 401, 402, and 403 and that under those rules "the testimony was relevant, was more probative than prejudicial, and would have been admissible."

Tennessee Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Such evidence may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). "Other purposes" have been defined to include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. See State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004). If the trial court substantially complies with the procedural requirements, its decision will only be reversed if it "applie[d] an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Wilson v. State, 367 S.W.3d 229, 235 (Tenn. 2012).

In this case, the trial court followed the proper procedures outlined in Rule 404(b) and concluded that there was not clear and convincing proof that the victim's sister had made false allegations of sexual abuse. Aside from the Defendant's vague contention during the first hearing on the matter that the unidentified "parties" had denied the allegations and that DCS did not find enough evidence to substantiate the claims, he did not present any evidence that the allegations were in fact false. This finding justified the court's excluding the evidence under Rule 404(b)(3). The court furthermore properly held that such evidence would not be admissible in order to establish a propensity to make false allegations of sexual abuse. See Tenn. R. Evid. 404(b)(2). The Defendant's complaint that the trial court should not have applied Rule 404(b) because the acts were not committed by him is without merit because Rule 404(b), while previously only

applying to the accused, now applies to "any individual," including a witness. Tenn. Code Ann. § 24-7-125; see also State v. Devin Buckingham, No. W2016-02350-CCA-R3-CD, 2018 WL 4003572, at *14 (Tenn. Crim. App. Aug. 20, 2018), perm. app. denied (Tenn. Jan. 16, 2019).

The Defendant contends that the trial court should have only reviewed the issue under Tennessee Rules of Evidence 401, 402, and 403. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 402 provides that all relevant evidence, subject to certain exceptions, is generally admissible. Tenn. R. Evid. 402. However, the advisory comment to Rule 402 provides that "[o]nce evidence satisfies the definition of relevance, it becomes admissible unless a rule excludes it." Id. In this case, the trial court properly determined that Rule 404(b) excluded evidence of the victim's sister's unrelated allegations of sexual abuse. In addition, relevant evidence may be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. As discussed, the trial court properly determined that the victim's sister's allegations of sexual abuse were irrelevant because there was no factual basis to conclude that they were false. The Defendant misunderstands the applicability of Rule 404(b) to witnesses and his sole reliance on Rules 401, 402, and 403 disregards the applicability of that rule. The trial court properly applied the rule and its decision to exclude this evidence was appropriate. Furthermore, the Defendant's argument presupposes that the victim's sister's allegations were false. Without proof that the allegations were false, the fact that the victim's sister reported sexual abuse by persons other than the Defendant is irrelevant. The trial court properly excluded the evidence.

## II. Forensic Interview

The Defendant argues that the trial court erred in admitting the recording of the victim's forensic interview.

The admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion. State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004). See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). A trial court's exercise of discretion will only be reversed on appeal if the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Robinson, 146 S.W.3d at 490 (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Tennessee Code Annotated section 24-7-123 provides for the admissibility of the video recording of a forensic interview of a child under the age of thirteen, during which the child described any act of sexual contact performed on or with the child, if certain requirements are met. Tenn. Code Ann. § 24-7-123(a). Relevant to this appeal, the video recording "may" be admitted if "[t]he child testifies, under oath, that the offered video recording is a true and correct recording of the events contained in the video recording and the child is available for cross examination[.]" Id. § 24-7-123(b)(1).

The Defendant asserts that the victim could not have sworn that the recording was an accurate depiction of the interview as required by the statute because she testified that she did not remember the interview. However, the victim testified that she had recently watched the video, she recognized herself in the video, and that she was telling the truth when she answered the questions on the video, although she could not remember the questions and answers at this point in time. The Defendant also argues that the victim could not swear to the veracity of the video because she was untruthful in it when she stated that the Defendant locked the bathroom door, but she testified at the hearing that the bathroom door did not lock. At the hearing, the victim testified that she remembered talking to defense counsel about her saying in the video that the Defendant would lock the bathroom door but that the door, in fact, will not lock. However, she said that she did not remember talking about the Defendant locking the bathroom door during the interview but that she did not try to lie about anything. A nine year old's memory two years later regarding whether a bathroom door locked hardly discredits her description of a sexual assault soon after the incident.

The trial court found that the victim had satisfactorily testified that the video was a true and correct recoding of the events contained in the video. The court elaborated:

She said she told the truth. And she's available for cross-examination . . . . Well, I think that the State has met their burden under 24[-]7[-]123. I think the only question we were really interested in was subsection [(b)](1). And, you know, the child did testify under oath. And she said she told . . . the truth in the video. She doesn't have any independent recollection of that, but I think for purposes . . . it doesn't say in here that she has to remember every single thing that she said or did. It just says that she is subject to cross-examination, which she was, and that what she told them was the truth. So I think . . . for purposes of this, at least the admissibility of it, I think the State has met their threshold, so I'm going to allow the evidence to come in at trial.

The trial court accredited the victim's testimony on direct examination that she had told the truth in the video over her subsequent testimony during the Defendant's

- 11 -

assertive cross-examination that she did not remember the interview. The trial court did not abuse its discretion in accrediting the victim's testimony on direct examination and admitting the video of the forensic interview.

### III. Sufficiency

The Defendant argues that the evidence is insufficient to support his conviction. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is

defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Id. § 39-13-501(7).

The Defendant argues that the evidence is insufficient to support his conviction. He asserts that the victim's inability to remember the rape at the time of trial contradicts the statements she made during the forensic interview, and that the "two statements should cancel each other out."

The victim gave a detailed account of the rape in a forensic interview approximately one to two months after the rape. In the interview, the victim recounted that the Defendant took her into the bathroom, blindfolded her, told her to kneel on the ground with her hands behind her back, and placed his penis into her mouth. He told her to suck on his penis as hard as she could, and she vomited because it hurt her throat. After she vomited, the Defendant told her that the "game was over." The jury was presented with the victim's lack of memory at the time of trial and, by its verdict, accredited the description of the rape she provided during the interview. The victim's testimony at trial was not "contradictory," but was simply a lack of memory by a twelve year old child trying to recall something that happened five years earlier when she was in the first grade. The victim did not testify that the rape did not happen; she only testified that she did not remember it. Again, all questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See Pappas, 754 S.W.2d at 623. The evidence is sufficient to support the Defendant's conviction for rape of a child.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

- 13 -